STEPHEN D. GOODWIN (*pro hac vice* motion forthcoming)
BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 577-2141
Facsimile: (901) 577-2303
sgoodwin@bakerdonelson.com

BENJAMIN J. HORWICH (State Bar No. 249090)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105
Telephone:  (415) 512-4000
Facsimile: (415) 512-4077
ben.horwich@mto.com

*Attorneys for Plaintiff BNSF Railway Company*
(additional counsel listed on signature page)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BNSF RAILWAY COMPANY,<br><br>              Plaintiff,<br><br>       vs.<br><br>ALAMEDA COUNTY,<br>CONTRA COSTA COUNTY,<br>FRESNO COUNTY,<br>KERN COUNTY,<br>KINGS COUNTY,<br>MADERA COUNTY,<br>MERCED COUNTY,<br>ORANGE COUNTY,<br>PLUMAS COUNTY<br>RIVERSIDE COUNTY,<br>SAN BERNARDINO COUNTY,<br>SAN DIEGO COUNTY,<br>SAN JOAQUIN COUNTY,<br>STANISLAUS COUNTY, and<br>TULARE COUNTY, CALIFORNIA,<br><br>              Defendants. | Case No. 19-cv-7230<br><br>**COMPLAINT** |

**INTRODUCTION**

1. Plaintiff BNSF Railway Company ("BNSF") is a railroad. Defendants are certain counties in California. Defendants tax BNSF's property at a tax rate that is higher than the tax rate generally applicable to commercial and industrial property in their respective jurisdictions. Because Congress has prohibited such discrimination in the property tax rates applied to railroads, Defendants' excessive taxation of BNSF's property is a violation of federal law. This is a civil action to enjoin that violation.

2. BNSF brings this action under Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the 4-R Act), Pub. L. No. 94-210, 90 Stat. 54 (February 5, 1976), now codified at 49 U.S.C. § 11501 and referred to herein as "Section 11501." Section 306 of the 4-R Act has been recodified a number of times in various locations of the U.S. Code without substantive change. *See CSX Transp. v. Alabama Dept. of Rev.*, 562 U.S. 277, 280 n.1 (2011). A copy of the original Section 306 is attached hereto as <u>Exhibit A</u>, and a copy of its current codification at 49 U.S.C. § 11501 is attached hereto as <u>Exhibit B</u>. Section 11501 prohibits California and its political subdivisions from imposing a higher tax rate on railroad property than the tax rate generally applicable to commercial and industrial property in the same jurisdiction. In addition to injunctive relief, BNSF seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that Defendants' imposition of property taxes at a tax rate higher than the tax rate generally applicable to commercial and industrial property in their respective jurisdictions violates Section 11501.

**SUBJECT MATTER JURISDICTION**

3. This Court's jurisdiction rests upon 49 U.S.C. § 11501(c), which confers jurisdiction upon district courts of the United States, notwithstanding 28 U.S.C. § 1341, to prevent a subdivision of a state from imposing discriminatory taxes on a common carrier by rail; and upon 28 U.S.C. § 1331 because this case arises under Section 11501, a federal law.

**PERSONAL JURISDICTION**

4. All Defendants are subject to the personal jurisdiction of this Court because they reside in California and are subject to the jurisdiction of California's courts of general jurisdiction.

**VENUE**

5. Venue in this District is proper under 28 U.S.C. § 1391(b) because Defendants Alameda County and Contra Costa County reside in this District, and all Defendants are residents of California.

**INTRADISTRICT ASSIGNMENT**

6. Because this action arises in part from BNSF's ownership of property in Alameda and Contra Costa Counties, this action should be assigned to the San Francisco Division or the Oakland Division of this Court under Civil Local Rule 3-2(d).

**PARTIES**

7. Plaintiff BNSF is a Delaware corporation with its principal place of business in Fort Worth, Texas. BNSF is engaged in interstate commerce as a common carrier by railroad. BNSF owns railroad operating property subject to property tax in various California counties, including the counties named as Defendants.

8. Defendants are counties of California, which are legal subdivisions of the State pursuant to Cal. Const. Art. XI, § 1. Defendants' officers, agents, and employees levy and collect the property taxes on BNSF's railroad operating property in their respective jurisdictions. Defendants are:

    a. Alameda County, California;
    b. Contra Costa County, California;
    c. Fresno County, California;
    d. Kern County, California;
    e. Kings County, California;
    f. Madera County, California;
    g. Merced County, California;
    h. Orange County, California;
    i. Plumas County, California;
    j. Riverside County, California;
    k. San Bernardino County, California;

|   |   |   |
|---|---|---|
| l. | San Diego County, California; |
| m. | San Joaquin County, California; |
| n. | Stanislaus County, California; |
| o. | Tulare County, California. |

**CALIFORNIA PROPERTY TAXES**

9. Generally, California imposes a property tax on all property in California, unless exempt. Cal. Const. Art. XIII, § 1.

**Property Tax Assessment**

10. The California State Board of Equalization ("the State Board") is charged by the California Constitution and statutes with assessing BNSF's property in California pursuant to Cal. Rev. & Tax. Code §§ 721 *et seq*.

11. The value of taxable property for assessment purposes is determined by the State Board for "state-assessed" property. Local assessors determine the value for assessment purposes of all other ("locally assessed") property.

12. "State-assessed" property includes the property of railroads, telephone companies, private carline companies, and companies transmitting or selling gas or electricity. Cal. Rev. & Tax. Code § 721. State-assessed property valued through the principle of unit valuation is also referred to as "unitary property." Cal. Rev. & Tax. Code §§ 723 and 723.1. Under the principle of unit valuation, all of a taxpayer's assets, wherever located, are valued as a unit, and that unitary value is then allocated among particular taxing jurisdictions.

13. California classifies and taxes the bulk of property in California as either "secured" or "unsecured." The "secured roll" consists of State-assessed property and locally assessed property, the taxes on which are a lien on the real property sufficient to secure payment of the taxes. *See* Cal. Rev. & Tax. Code § 109. The "unsecured roll" consists of real property, such as possessory interests in tax-exempt land, and personal property, which do not appear in the secured roll. *Id.*

### Property Tax Rates

14. Unitary property and locally assessed property are subject to different tax rates. Each county board of supervisors, acting on behalf of each Defendant, determines the tax rates to be applied in their respective counties for both locally assessed and unitary property, including BNSF's unitary property.

*Tax rates for locally assessed property*

15. Locally assessed property is assigned to particular tax rate areas within each county, based on the property's location in the county.

16. The annual ad valorem tax rate for each tax rate area is established as 1% plus an amount necessary to produce revenues to make payments for the interest and principal on any bonded indebtedness. Cal. Rev. & Tax. Code § 93 ("Section 93"). This latter portion of the tax rate, known as the "debt service component," varies among tax rate areas due to differences in bonded indebtedness at different locations within a county.

*Tax rates for regulated railway company property*

17. Under Cal. Rev. & Tax. Code § 100.11, the value attributable to the state-assessed unitary property of a regulated railway company is generally allocated to a single countywide tax rate area in each county in which the property is located. The only exception to this rule, which is not relevant here, is that the values of certain very large, recently constructed facilities are specifically allocated in part to the county rate area in which the facilities are physically located. Cal. Rev. & Tax. Code § 100.11(b)(1).

18. The "unitary" tax rate to be applied to these countywide tax rate areas is established in accordance with the formula in Cal. Rev. & Tax. Code § 100(b)(2) (hereinafter, "Section 100"). Cal. Rev. & Tax. Code § 100.11(a)(2)(B). The Section 100 tax rate resembles the Section 93 tax rate in some respects and differs from it in others: Like Section 93, Section 100 establishes a baseline 1% tax. But the debt service component of Section 100 is calculated by taking the previous year's unitary debt service rate, and multiplying it by the percentage change between the two preceding fiscal years in the county's ad valorem debt service levy for the secured roll (excluding unitary levies and certain other levies).

*Average rate of general property taxation*

19. The State Board determines on an annual basis the "average rate of general property taxation" in each county and on a statewide basis pursuant to Cal. Rev. & Tax. Code § 11403. This rate is computed by dividing the sum of most county and local tax levies by the total assessed valuation of property for a given year. *Id.* The purpose of this calculation is to determine the rate to be applied to the taxable value of railroad cars owned by private carline companies. The State Board computes and reports the average rate of general property taxation both statewide and county-by-county.

20. To BNSF's knowledge, Defendants do not publish or establish the average rate of property taxation for property on the secured roll or for property on the unsecured roll in their respective jurisdictions. But the total levies and total assessments for property on those rolls are the principal basis on which the State Board computes the average rate of general property taxation in each county. Moreover, in each Defendant county, the vast majority of property assessments and levies—typically well over 90%—are specifically attributable to property on the secured roll in that county. Because these assessments and levies overwhelmingly influence the State Board's computation, BNSF is informed and believes that the average rate of general property taxation reported by the State Board for each Defendant is approximately equal to the average rate of taxation for property on the secured roll in that county.

*Application of property tax rates*

21. Defendants' respective County Auditors apply the applicable tax rate to the assessed value shown on the assessment rolls. Cal. Rev. & Tax. Code § 2152. Defendants' respective Tax Collector (or similar official) collects the taxes on BNSF's unitary property at the unitary rate determined by each county board of supervisors. Cal. Rev. & Tax. Code § 2605.

22. In short, BNSF's unitary tax rate, and thus its tax liability, is calculated under a different formula from the tax rate for other commercial and industrial property in California. Other commercial and industrial tax rates are determined on the basis of whether the property is on the "secured roll" or the "unsecured roll" and based on the formula of Section 93, with the average rate for locally assessed property on the secured roll being approximately equal to the average rate

of general property taxation reported by the State Board.  The tax rate applied to BNSF's property in each county, by contrast, is a "unitary" tax rate calculated pursuant to Section 100.  These two rates differ, in particular, in how the debt service component of the rate is computed.

### **SECTION 11501**

23. Section 11501 declares that discriminatory taxation of transportation property by states, political subdivisions of a state, or governmental entities or persons acting on behalf of such states or subdivisions, is unlawful and constitutes an unreasonable and unjust discrimination against, and an undue burden on, interstate commerce.  The statute states, in relevant part:

> (b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
>
> * * *
>
> (3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

24. BNSF's railroad unitary property in California is "transportation property" within the meaning of Section 11501.

25. Section 11501 is the landmark legislation passed by Congress to eliminate the widespread and longstanding practice of discriminatory state and local taxation of railroads.  *See Burlington Northern Railroad Co. v. Oklahoma Tax Commission*, 481 U.S. 454, 457 (1987).

26. Section 11501 affords railroads a federal forum and federal remedy to prohibit violations, without the limitations imposed by 28 U.S.C. § 1341 (generally barring federal jurisdiction in state tax matters).  *See* 49 U.S.C. § 11501(c); *Oregon Short Line R.R. Co. v. Dep't of Revenue*, 139 F.3d 1259, 1266 (9th Cir. 1998).

### **BNSF'S CLAIM UNDER 49 U.S.C. § 11501**

27. BNSF restates by reference the allegations of paragraphs 1 through 26.

28. In *Trailer Train Co. v. State Board of Equalization*, 697 F.2d 860 (9th Cir.), *cert. denied*, 464 U.S. 846 (1983), the Ninth Circuit held that Section 11501 "prohibits the taxation of rail transportation property at a tax rate higher than the tax rate generally applicable to commercial

and industrial property in the same assessment jurisdiction." *Id*. at 866. The Ninth Circuit further held that in California there is no specific tax rate "generally applicable to commercial and industrial property," in part because commercial and industrial property appears on both the "secured" and "unsecured" tax rolls. *Id.* at 867.

29. The Ninth Circuit held that, in the absence of a generally applicable rate specific to commercial and industrial property, a court hearing a Section 11501(b)(3) claim should compare the railroad's tax rate to "[t]he tax rate applicable" to property on the secured roll or to property on the unsecured roll (whichever contains the majority of commercial and industrial property)—or, failing that, to the average rate for all property. *Trailer Train*, 697 F.3d at 868.

30. Although the vast majority of property is on the secured roll in each of Defendant's jurisdictions (including, on information and belief, the vast majority of commercial and industrial property), the assignment of that property to particular tax-rate areas with differing rates means there is no particular "tax rate applicable" to property on the secured roll. Accordingly, under *Trailer Train*, the proper basis for comparison is the average rate of general property taxation in Defendants' respective jurisdictions, as published by the State Board.

31. Alternatively, to the extent there is any "tax rate applicable" to property on the secured roll in a county, that rate is the average rate of taxation for property on that roll which, as explained above, *supra* ¶ 20, is approximately equal to the average rate of general property taxation in Defendants' respective jurisdictions, as published by the State Board.

32. Accordingly, under any application of *Trailer Train*'s interpretation of Section 11501(b)(3), the annual "average rate of general property taxation" that the State Board calculates for each county is the maximum tax rate that may apply to BNSF's property in that county. This average rate of general property taxation in each county is referred to below as the "Section 11501 benchmark rate."

33. For tax year 2014-15 through the current tax year 2019-20, for each of the Defendants, the Section 11501 benchmark rate is significantly lower than the Section 100 "unitary" tax rate applied to BNSF's property.

34. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in each of the Defendant Counties for the 2019-20 tax year. This disparity is especially pronounced considering that all taxpayers are subject to a baseline 1% tax and the difference in tax rates is attributable instead to the debt service component, which is in most counties several times larger for BNSF than for other taxpayers.

| County | 2019-20 BNSF Unitary Rate | 2019-20 Section 11501 Benchmark Rate |
|---|---|---|
| Alameda | 2.518700% | 1.241% |
| Contra Costa | 1.686500% | 1.148% |
| Fresno | 1.370408% | 1.181% |
| Kern | 1.611299% | 1.240% |
| Kings | 1.326084% | 1.087% |
| Madera | 1.203169% | 1.089% |
| Merced | 1.410901% | 1.088% |
| Orange | 1.281730% | 1.064% |
| Plumas | 1.116520% | 1.089% |
| Riverside | 1.761330% | 1.164% |
| San Bernardino | 1.364500% | 1.144% |
| San Diego | 1.623310% | 1.142% |
| San Joaquin | 1.692200% | 1.145% |
| Stanislaus | 1.380110% | 1.103% |
| Tulare | 1.400200% | 1.113% |

35. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in Alameda County over the past six years.

**Alameda County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 2.518700% | 1.241% |
| 2018-19 | 2.355700% | 1.230% |
| 2017-18 | 2.157300% | 1.211% |
| 2016-17 | 2.048400% | 1.209% |
| 2015-16 | 2.076700% | 1.224% |
| 2014-15 | 1.996700% | 1.167% |

36. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in Contra Costa County over the past six years.

**Contra Costa County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.686500% | 1.148% |
| 2018-19 | 1.626900% | 1.146% |
| 2017-18 | 1.594800% | 1.147% |
| 2016-17 | 1.595900% | 1.148% |
| 2015-16 | 1.585900% | 1.155% |
| 2014-15 | 1.503200% | 1.104% |

37. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in Fresno County over the past six years.

**Fresno County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.370408% | 1.181% |
| 2018-19 | 1.358140% | 1.183% |
| 2017-18 | 1.293456% | 1.159% |
| 2016-17 | 1.287396% | 1.163% |
| 2015-16 | 1.276992% | 1.164% |
| 2014-15 | 1.262312% | 1.140% |

38. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in Kern County over the past six years.

**Kern County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.611299% | 1.240% |
| 2018-19 | 1.624683% | 1.236% |
| 2017-18 | 1.421233% | 1.190% |
| 2016-17 | 1.418453% | 1.176% |
| 2015-16 | 1.398217% | 1.155% |
| 2014-15 | 1.407754% | 1.019% |

39. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in Kings County over the past six years.

**Kings County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.326084% | 1.087% |
| 2018-19 | 1.291715% | 1.090% |
| 2017-18 | 1.275414% | 1.079% |
| 2016-17 | 1.227332% | 1.086% |
| 2015-16 | 1.214839% | 1.088% |
| 2014-15 | 1.219004% | 1.004% |

40. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in Madera County over the past six years.

**Madera County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.203169% | 1.089% |
| 2018-19 | 1.189013% | 1.095% |
| 2017-18 | 1.191513% | 1.084% |
| 2016-17 | 1.209372% | 1.093% |
| 2015-16 | 1.144441% | 1.069% |
| 2014-15 | 1.140172% | 1.074% |

41. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in Merced County over the past six years.

**Merced County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.410901% | 1.088% |
| 2018-19 | 1.467300% | 1.094% |
| 2017-18 | 1.474600% | 1.105% |
| 2016-17 | 1.433000% | 1.100% |
| 2015-16 | 1.379300% | 1.092% |
| 2014-15 | 1.320900% | 1.140% |

42. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in Orange County over the past six years.

**Orange County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.281730% | 1.064% |
| 2018-19 | 1.261980% | 1.063% |
| 2017-18 | 1.230390% | 1.059% |
| 2016-17 | 1.227020% | 1.060% |
| 2015-16 | 1.193860% | 1.055% |
| 2014-15 | 1.194000% | 1.010% |

43. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in Plumas County over the past six years.

**Plumas County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.116520% | 1.089% |
| 2018-19 | 1.131520% | 1.088% |
| 2017-18 | 1.040300% | 1.036% |
| 2016-17 | 1.039740% | 1.035% |
| 2015-16 | 1.040320% | 1.037% |
| 2014-15 | 1.038380% | 1.029% |

44. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in Riverside County over the past six years.

**Riverside County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.761330% | 1.164% |
| 2018-19 | 1.729170% | 1.166% |
| 2017-18 | 1.661210% | 1.158% |
| 2016-17 | 1.626490% | 1.156% |
| 2015-16 | 1.563010% | 1.155% |
| 2014-15 | 1.539710% | 1.111% |

45. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in San Bernardino County over the past six years.

**San Bernardino County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.364500% | 1.144% |
| 2018-19 | 1.326900% | 1.155% |
| 2017-18 | 1.351900% | 1.153% |
| 2016-17 | 1.345500% | 1.155% |
| 2015-16 | 1.327200% | 1.150% |
| 2014-15 | 1.273100% | 1.110% |

46. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in San Diego County over the past six years.

**San Diego County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.623310% | 1.142% |
| 2018-19 | 1.584580% | 1.141% |
| 2017-18 | 1.526440% | 1.136% |
| 2016-17 | 1.507530% | 1.138% |
| 2015-16 | 1.473300% | 1.134% |
| 2014-15 | 1.453500% | 1.055% |

47. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in San Joaquin County over the past six years.

**San Joaquin County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.692200% | 1.145% |
| 2018-19 | 1.597000% | 1.133% |
| 2017-18 | 1.566200% | 1.134% |
| 2016-17 | 1.551500% | 1.141% |
| 2015-16 | 1.441400% | 1.122% |
| 2014-15 | 1.381900% | 1.081% |

48. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in Stanislaus County over the past six years.

**Stanislaus County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.380110% | 1.103% |
| 2018-19 | 1.343775% | 1.105% |
| 2017-18 | 1.297448% | 1.097% |
| 2016-17 | 1.282112% | 1.099% |
| 2015-16 | 1.275684% | 1.107% |
| 2014-15 | 1.275146% | 1.104% |

49. The table below demonstrates the disparity between the unitary tax rate and the Section 11501 benchmark rate in Tulare County over the past six years.

**Tulare County**

| Tax Year | BNSF Unitary Rate | Section 11501 Benchmark Rate |
|---|---|---|
| 2019-20 | 1.400200% | 1.113% |
| 2018-19 | 1.402800% | 1.115% |
| 2017-18 | 1.340800% | 1.106% |
| 2016-17 | 1.341100% | 1.108% |
| 2015-16 | 1.321900% | 1.107% |
| 2014-15 | 1.315400% | 1.054% |

50. Because the Section 100 unitary tax rate applied to BNSF property exceeds (and has exceeded) the Section 11501 benchmark rate, the levy of taxes at the unitary tax rate against BNSF violates Section 11501(b)(3), and the collection of excessive taxes based on the unitary rate also violates Section 11501(b)(3).

51. The first installment of BNSF's property taxes for tax year 2019-20 is payable on November 1, 2019, and, if not paid, becomes delinquent on December 10, 2019. The second installment is due and payable on February 1, 2020, and, if not paid, becomes delinquent on April 10, 2020.

52. Unless Defendants, their agents, employees, and all those acting in concert or participating with them are enjoined from levying or collecting property taxes from BNSF based on a tax rate higher than the tax rate generally applicable to commercial and industrial property in

the same assessment jurisdiction (represented by the Section 11501 benchmark rate), BNSF will be compelled to pay substantial taxes wrongfully imposed in violation of Section 11501(b)(3).

53. Injunctive relief under Section 11501 does not require a showing of the standard equitable prerequisites for such relief.  Instead, the plaintiff under Section 11501 need only establish reasonable cause to believe that Section 11501 has been or is about to be violated.  *See Trailer Train*, 697 F.2d at 868-69 (citing *Atchison, Topeka & Santa Fe Ry. v. Lennen*, 640 F.2d 255, 259-61 (10th Cir. 1981)).

54. The allegations of this Complaint and the long history of Defendants' excessive taxation of BNSF's property establish, at a minimum, that the Defendants have violated and are likely to continue to violate Section 11501.

55. In addition, BNSF is entitled to a declaratory judgment, order, and decree of this Court declaring that the levy or collection of BNSF's property taxes at a tax rate higher than the tax rate generally applicable to commercial and industrial property, represented by the Section 11501 benchmark rate, has violated and continues to violate Section 11501(b)(3).

WHEREFORE, BNSF requests that this Court:

(1) Enjoin the Defendants, their agents, employees and all those acting in concert or participating with them, from levying or collecting property taxes from BNSF at a tax rate higher than the tax rate generally applicable to commercial and industrial property, represented by the Section 11501 benchmark rate in their respective jurisdictions;

(2) Declare that the levy or collection of California property taxes on BNSF's railroad operating property at a tax rate higher than the tax rate generally applicable to commercial and industrial property, represented by the Section 11501 benchmark rate, violates 49 U.S.C. § 11501(b)(3); and

(3) Award BNSF its costs and such further equitable relief to which it may be entitled.

| | | |
|---|---|---|
| 1 | DATED:  November 1, 2019 | MUNGER, TOLLES & OLSON LLP |

By: _____/s/ *Benjamin J. Horwich*_____
    BENJAMIN J. HORWICH
      (State Bar No. 249090)
    560 Mission Street, Twenty-Seventh Floor
    San Francisco, California 94105
    Telephone: (415) 512-4000
    Facsimile: (415) 512-4077
    ben.horwich@mto.com

    JESSICA REICH BARIL
      (State Bar No. 302135)
    350 South Grand Avenue, Fiftieth Floor
    Los Angeles, California 90071
    Telephone: (213) 683-9100
    Facsimile: (213) 683-5164
    jessica.baril@mto.com

BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, PC
    STEPHEN D. GOODWIN
      (*pro hac vice* motion forthcoming)
    ZACHARY A. KISBER
      (*pro hac vice* motion forthcoming)
    First Tennessee Bank Building
    165 Madison Avenue, Suite 2000
    Memphis, Tennessee 38103
    Telephone: (901) 577-2141
    Facsimile: (901) 577-2303
    sgoodwin@bakerdonelson.com
    zkisber@bakerdonelson.com

    MISTY SMITH KELLEY
      (*pro hac vice* motion forthcoming)
    JOHN M. PHILLIPS
      (*pro hac vice* motion forthcoming)
    633 Chestnut St., Suite 1900
    Chattanooga, Tennessee  37450
    Telephone: (423) 209-4148
    Facsimile: (423) 752-9549
    mkelley@bakerdonelson.com
    jphillips@bakerdonelson.com

*Attorneys for Plaintiff BNSF Railway Company*

# EXHIBIT A

Railroad Revitalization and Regulatory Reform Act of 1976, Pub. L. No. 94-210, § 306, 90 Stat. 54 (1976) provides:

> SEC. 306. Part I of the Interstate Commerce Act (49 U.S.C. 1 et seq.), as amended by this Act, is further amended by inserting therein a new section 28, as follows:
>
> "SEC. 28. (1) Notwithstanding the provisions of section 202 (b), any action described in this subsection is declared to constitute an unreasonable and unjust discrimination against, and an undue burden on, interstate commerce. It is unlawful for a State, a political subdivision of a State, or a governmental entity or person acting on behalf of such State or subdivision to commit any of the following prohibited acts:
>
> "(a) The assessment (but only to the extent of any portion based on excessive values as hereinafter described), for purposes of a property tax levied by any taxing district, of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other commercial and industrial property in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property.
>
> "(b) The levy or collection of any tax on an assessment which is unlawful under subdivision (a).
>
> "(c) The levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction.
>
> "(d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this part.
>
> "(2) Notwithstanding any provision of section 1341 of title 28, United States Code, or of the constitution or laws of any State, the district courts of the United States shall have jurisdiction, without regard to amount in controversy or citizenship of the parties, to grant such mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent, restrain, or terminate any acts in violation of this section, except that—
>
> "(a) such jurisdiction shall not be exclusive of the jurisdiction which any Federal or State court may have in the absence of this subsection;
>
> "(b) the provisions of this section shall not become effective until 3 years after the date of enactment of this section;

"(c) no relief may be granted under this section unless the ratio of assessed value to true market value, with respect to transportation property, exceeds by at least 5 per centum the ratio of assessed value to true market value, with respect to all other commercial and industrial property in the same assessment jurisdiction;

"(d) the burden of proof with respect to the determination of assessed value and true market value shall be that declared by the applicable State law; and

"(e) in the event that the ratio of the assessed value of all other commercial and industrial property in the assessment jurisdiction to the true market value of all such other commercial and industrial property cannot be established through the random-sampling method known as a sales assessment ratio study (conducted in accordance with statistical principles applicable to such studies) to the satisfaction of the court hearing the complaint that transportation property has been or is being assessed or taxed in contravention of the provisions of this section, then the court shall hold unlawful an assessment of such transportation property at a value which bears a higher ratio to the true market value of such transportation property than the assessed value of all other property in the assessment jurisdiction in which is included such taxing district and subject to a property tax levy bears to the true market value of all such other property, and the collection of any ad valorem property tax on such transportation property at a tax rate higher than the tax rate generally applicable to taxable property in the taxing district.

"(3) As used in this section, the term—

"(a) 'assessment' means valuation for purposes of a property tax levied by any taxing district;

"(b) 'assessment jurisdiction' means a geographical area, such as a State or a county, city, township, or special purpose district within such State which is a unit for purposes of determining the assessed value of property for ad valorem taxation;

"(c) 'commercial and industrial property' or 'all other commercial and industrial property' means all property, real or personal, other than transportation property and land used primarily for agricultural purposes or primarily for the purpose of growing timber, which is devoted to a commercial or industrial use and which is subject to a property tax levy; and

"(d) 'transportation property' means transportation property, as defined in regulations of the Commission, which is owned or used by a common carrier by railroad subject to this part or which is owned by the National Railroad Passenger Corporation."

# EXHIBIT B

49 U.S.C. § 11501 (2019) provides:

§ 11501. Tax discrimination against rail transportation property

(a) In this section—

(1) the term "assessment" means valuation for a property tax levied by a taxing district;

(2) the term "assessment jurisdiction" means a geographical area in a State used in determining the assessed value of property for ad valorem taxation;

(3) the term "rail transportation property" means property, as defined by the Board, owned or used by a rail carrier providing transportation subject to the jurisdiction of the Board under this part; and

(4) the term "commercial and industrial property" means property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy.

(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(1) Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

(2) Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.

(3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

(4) Impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Board under this part.

(c) Notwithstanding section 1341 of title 28 and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section.  Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction.  The burden of proof in determining assessed value and true market value is governed by State law.  If the ratio of the assessed value of other commercial and industrial property in the assessment jurisdiction to the true market value of all other commercial and industrial property cannot be determined to the satisfaction of the district court through the random-sampling method known as a sales assessment ratio study (to be carried out under statistical principles applicable to such a study), the court shall find, as a violation of this section—

(1) an assessment of the rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the assessed value of all other property subject to a property tax levy in the assessment jurisdiction has to the true market value of all other commercial and industrial property; and

(2) the collection of an ad valorem property tax on the rail transportation property at a tax rate that exceeds the tax ratio rate applicable to taxable property in the taxing district.